## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## LOCAL 30, INTERNATIONAL LONG-SHOREMEN'S & WAREHOUSE-MEN'S UNION, Respondent.

### No. 76–2399.

United States Court of Appeals,
Ninth Circuit.

March 4, 1977.

---

15. *Cf.* Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b) (1975),* 88 Harv.L.Rev. 607, 616–17.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Howard E. Perlstein (argued), Washington, D. C., for petitioner.

Neil M. Herring (argued), Finkel & Herring, Los Angeles, Cal., Seymour Swerdlow, Dern, Mason & Swerdlow, Beverly Hills, Cal., Roderick S. Cooney, Bakersfield, Cal., Terry R. Livingston, Tehachapi, Cal., Bruce Gibson, U. S. Borax & Chem. Corp., Los Angeles, Cal., for respondent.

Before MERRILL, ELY and CHOY, Circuit Judges.

## OPINION

ELY, Circuit Judge:

The petitioning Board's Decision and Order is reported at 223 N.L.R.B. No. 196 (1976).

Local 30 of the International Longshoremen's and Warehousemen's Union (the Union) represents the production and maintenance employees of the United States Borax and Chemical Corporation at Boron, California (Borax). The Union began an economic strike against Borax on June 14, 1974, and on June 27th, it began picketing all plant entrances, including the contractors' gate, a gate used only by contractors and not by Borax's regular employees. Borax had, at the time, entered into a contract for the construction of additional facilities. Borax filed charges of unfair labor practice against the Union, alleging before the Board violations of the secondary boycott provisions of the National Labor Relations Act (the Act). Thereafter, the Board petitioned the United States District Court to enjoin the Union from picketing at the gate utilized by the contractors. The injunction was eventually granted, whereupon the Union discontinued picketing the gate at that time. The unfair labor practice charge never proceeded to a hearing and was eventual-

ly dismissed by the Board after the conclusion of the strike.

Terry R. Livingston was an employee of Borax and a member of the Union, but during the strike he signed up for interim work at the hiring hall operated by the International Brotherhood of Electrical Workers Local 428, of which he had formerly been a member. One of the companies to which Livingston was assigned to work was the Johnson-Peltier Electrical Contractors, a firm engaged in construction on a new Boron refinery that was under construction. In order to reach their job location with Johnson-Peltier at the Boron site, Livingston and his co-workers were required to, and did, cross the picket line which the Union had, until July 23rd, maintained at the access road to the contractors' gate.

On August 30, 1974, the Union, through its secretary, notified Livingston that charges of "engaging in conduct detrimental to the welfare and interests of the Local membership . . . [and] engaging in the breaking of a properly and legally authorized strike of this local . . . " had been brought against him and that he would be tried on September 11th. Livingston, who had resigned from the Union on August 15th, did not attend the trial, the Union trial committee found him guilty as charged after hearing testimony from two employees, and recommended a $3150 fine against him. On September 13th, the Union Secretary notified Livingston that the membership of the Union would vote on the trial committee's recommendation at a regular meeting scheduled for September 17th. Although informed that he could be present at the meeting, Livingston did not attend it, and at the meeting, the membership unanimously voted "to accept the findings of the Trial Committee and to impose a fine of $3150". The Union Secretary mailed a letter to Livingston on September 18th, advising Livingston of the membership's action and the amount of the fine. Livingston did not respond, and on March 6th he received a letter from the Union's counsel stating that the Union would institute a civil suit unless the fine were paid. On March 18th, Living-

ston filed the instant unfair labor practice charges against the Union, and on March 19th the Board's regional office served a copy of the charge upon the Union by registered mail.

Based on the foregoing evidence, the Board concluded that the Union had violated section 8(b)(1)(A) of the Act by fining Livingston because he refused to honor its secondary picket line at the contractors' gate. The Board's order required the Union to cease and desist from the unfair labor practice found, and to take no action to collect the fine.

I.

The Union's major attack on the Board's order is that the complaint was time barred by Section 10(b) of the Act. The relevant portion of section 10(b) provides:

"(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board . . . shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof . . . Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . . 29 U.S.C. § 160(b)."

The first problem is the determination of the time when the six-month period began to run. The Union argues that under the Supreme Court's holding in *Local Lodge No. 1424, International Association of Machinists v. N.L.R.B.*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), the time period commenced on September 17th, when the Union voted to impose the fine. Although a strict literal reading of the Supreme Court's opinion might offer some support for the Union's position, we conclude that the statute did not begin to run until Livingston received notice of the action taken

by the Union. Insofar as Livingston could undeniably know, it was not until he had received notice of the penalty that he was in a position to complain of an unfair labor practice. Our case is much different from *Local Lodge No. 1424*, wherein the alleged unfair labor practice was the continued enforcement of a bargaining agreement which would have been invalid from its inception. As the Second Circuit noted in *Local 1104, Communications Workers of America, AFL–CIO v. N.L.R.B.*, 520 F.2d 411 (2d Cir. 1975):

> "The significant factor differentiating that case from this is that there the employee could have filed her charge at any time after the agreement went into effect. Here, however, it was only after the strikebreakers had been refused membership that they could even have considered filing a charge. The strike ended on February 18, and the denials of membership were announced on August 18, six months to the day after the strike ended—six months and one day if one starts to count from February 17, the last day of the strike, rather than February 18, the day work resumed. Thus, to sustain the local's position here would be to hold that, although an unfair labor practice occurred, there was never a time—or at most only a few hours—when a timely charge could have been filed. Surely the Court in *Local Lodge No. 1424* did not intend such a result. 'It does not seem reasonable to argue that the statutory limitations period begins to run'—or may even run out—'before the violation occurs.' *NLRB v. Plumbers & Pipe Fitters Local Union 214*, 298 F.2d 427, 428 (7th Cir. 1962)." 520 F.2d at 416.

Thus, in our case, if Livingston had moved away rather than simply resigning from the Union, and if he had not received notice of the fine until six months after its imposition, the Union would have us hold that the claim would be barred. We prefer the path taken by the Second Circuit in *Local Lodge No. 1104* and hold, therefore, that the six-month time period does not begin to run until the laborer was in a position to file the unfair labor practice charge, i. e., upon receipt of the notice of the penalty.

■ The foregoing conclusion does not end our inquiry, however, because of the Union's challenge to the Board's finding [1] that Livingston did not receive the letter on September 19th. The thrust of the Union's attack is based on the presumption that mail properly stamped, correctly addressed, and deposited in the mail will be received in due course. *See* JONES ON EVIDENCE, Vol. 1 § 341 (6th ed. 1972). Since, however, the Union admits that the notice to Livingston was not properly addressed, it cannot benefit from the presumption. Accordingly, the Board's findings in this respect cannot be overturned.

■ We read the finding of the Board as indicating that Livingston learned of the fine no earlier than September 20th.[2] Since it is undisputed that the Union received notice of the charge on March 20, 1976, the claim is not barred by Section 10(b) of the Act.[3]

## II.

■ The Union makes two other attacks on the Board's order. We reject both. First, it is argued that the withdrawal of the prior unfair labor practice charge, which related to the illegal picketing of the contractors' gate, bars the present unfair labor practice charge. The Union argues that the illegal picketing is an "essential

---

1. Although this finding was made initially by the administrative law judge, the Board affirmed the findings and conclusions and for convenience we refer to it as the Board's findings.

2. The finding of the Administrative Law Judge might have been stated more clearly, but his statement that "I do not find that the letter was delivered by the postman to Livingston's home on September 19, 1974", is clearly equivalent to a finding that the letter was *not* delivered on September 19th.

3. We thus need not reach the question of the Board's application of its rule 102.113 (equating the date of service of the complaint with the date of its mailing by the Board).

element" of the Board's case. The section 8(b)(4) illegal picket charge is not being reinstated. Evidence relating to it was utilized solely for the purpose of shedding light upon the nature of the penalty that the Union imposed. Regardless of the settlement of the original picketing dispute, the Board is not powerless to remedy illegal action by the Union, even though some roots of that action reached into the prior dispute. *Cf. Local Lodge No. 1424, supra.*

 Finally, the Union argues that Congress did not intend to control the conduct of labor unions through section 8(b)(1) proceedings aimed at intra-union discipline. The argument has merit only insofar as the Supreme Court has held that the Section does not affect the Union's conduct of purely internal affairs. But the internal affairs exemption from section 8(b)(1)(A) does not apply when a union's application of an internal rule is manifestly contrary to national labor policy. In *Scofield v. N.L.R.B.*, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969), the Court states that section 8(b)(1) leaves a union free to enforce a properly adopted rule which:

> "[R]eflects a legitimate union interest, impairs no policy Congress has embedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule." *Id.* at 430, 89 S.Ct. at 1158.

In this connection the Board concluded in the present matter:

> "[R]espondent's fine against Livingston was not privileged by the proviso of Section 8(b)(1)(A) for the simple reason that its purpose was to discipline Livingston for refusing to honor an illegal picket line which violated Section 8(b)(4) of the Act. The fine did not meet one of the criteria announced in the Supreme Court in *Scofield, supra*, namely that it 'reflects a legitimate union interest and *impairs no policy Congress has embedded in the labor laws.*'" (emphasis in the original).

The Board's foregoing comment comports with the position taken by our court in *N.L.R.B. v. Retail Clerks Union, Local 1179,*

526 F.2d 142 (9th Cir. 1975). There, we wrote,

> "[T]he Board and other circuits have invalidated union discipline as an impairment on national labor policy when taken to compel members to strike in violation of the Labor Act or of their collective bargaining agreement. *See, e. g.,* . . *Local 1104, Communications Workers v. N.L.R.B.*, 520 F.2d 411 (2d Cir. 1975)." *Id.* at 146.

Substantial evidence on the record taken as a whole supports the Board's decision; hence, the challenged Order will be

ENFORCED.