**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**STATIONARY ENGINEERS, LOCAL 39, et al., Respondent.**

**No. 83–7949.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1984.

Decided Oct. 30, 1984.

Elliott Moore, N.R.L.B. Peter M. Bernstein, Margaret Bezou, Washington, D.C., for petitioner.

David A. Rosenfeld, Michael B. Roger, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for respondent.

Before MERRILL, ALARCON and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

The National Labor Relations Board (Board) has applied for enforcement of its order issued against Stationary Engineers, Local 39, International Union of Operating Engineers, AFL–CIO (the Stationary Engineers Union or the Union). The Stationary Engineers Union contends that the Board erred in holding (1) that it violated Section 8(g) of the National Labor Relations Act (NLRA) by failing to give proper or timely notice of its intention to respect picket lines of another union and (2) that it violated Section 8(b)(1)(A) of the NLRA by disciplining and fining members of the Stationary Engineers Union who failed to respect such picket lines.

### I

On February 15, 1982, the Office and Professional Employees Union, Local 29, struck Kaiser Foundation Hospitals (Kaiser), a health care institution as defined by 29 U.S.C. § 152(14). Picket lines were set up at the Kaiser hospitals in Oakland and Hayward. On February 22, the Stationary Engineers Union sent mailgrams to Kaiser containing the following text:

THIS IS TO NOTIFY YOU THAT IF THE OFFICE AND PROFESSIONAL EMPLOYEES UNION LOCAL #29 STRIKE KAISER FOUNDATION HOSPITAL, THE PERMANENTE GROUP AND KAISER FOUNDATION HEALTH PLAN, THIS UNION INTENDS TO RESPECT PICKET LINES TO THE EXTENT PERMITTED BY LAW, AT THE SAME TIME, LOCATIONS AND PLACES AS SPECIFIED BY THE OFFICE AND PROFESSIONAL EMPLOYEES UNION LOCAL #29, AS NOTED ON THE ATTACHED LIST.

The mailgrams failed to state the date or time the Stationary Engineers Union's action was to commence.

On March 4, Robert Herbruger, a business representative for the Stationary Engineers Union, entered the engineering shop at the Hayward facility and informed the engineers that they were to honor the Office and Professional Employees Union's picket lines. Herbruger told the employees that they could be subject to discipline if they did not comply with the Stationary Engineers Union's instruction. These engineers refused to observe the picket line.

On the same date, Michael Seitz, another business agent of the Stationary Engineers Union, informed the engineers at the Kaiser's Oakland facility that as of midnight the previous night, the Stationary Engineers Union was honoring the Office and Professional Employees Union's picket line. These engineers were also warned that they could be disciplined if they crossed the picket line. Approximately one-half of these engineers respected the picket line.

The strike ended on March 14. On May 4, 1982, the Stationary Engineers Union sent a letter to Robert Monroe, a member who worked at the Kaiser satellite clinic located in Fremont. The letter stated that the Stationary Engineers Union's executive board believed Monroe had failed to comply with the orders to honor the picket lines. Monroe was directed to appear at a meeting scheduled for May 22 to defend himself against the charges. Unlike the engineers who worked at the Hayward and Oakland hospitals, Monroe had never received instruction from the Stationary Engineers Union not to cross to the picket line.

At the May 22 meeting, the Stationary Engineers Union conducted an inquiry of its members charged with failure to respect the picket lines. Union members were asked to sign a document setting forth the number of days that they had crossed the Office Employees' picket lines. The members then agreed to pay a fine based on the number of crossings. Monroe did not attend this meeting and he never was fined nor brought up on charges. Nevertheless, Monroe filed a complaint against the Sta-

tionary Engineers Union in this case.[1] He alleged that the Stationary Engineers Union was guilty of violations of Section 8(b)(1)(A) and Section 8(g) of the NLRA.

On March 29, 1983, Administrative Law Judge Michael Stevenson (ALJ) found that the Stationary Engineers Union violated Section 8(g) of the Act by failing to specify the date and time of its intended action, and that the Union violated Section 8(b)(1)(A) by threatening and disciplining union members for crossing the Office and Professional Employees Union's picket lines. The ALJ invalidated the fines imposed on the engineers and ordered the Union to cease and desist from unfair labor practices.

On October 21, 1983, the Board affirmed the rulings, findings and conclusions of the ALJ, and adopted his recommended order.

The Union refused to comply with the Board's order. The Board filed an application for enforcement of its order on December 20, 1983.

## II

We must determine whether substantial evidence supports the Board's factual findings. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–64, 95 L.Ed. 456 (1951). The NLRB's construction of the NLRA is entitled to deference, *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), and should be followed "unless there are compelling indications that it is wrong." *NLRB v. Hendricks County Rural Electric Membership Corp.*, 454 U.S. 170, 177, 102 S.Ct. 216, 222, 70 L.Ed.2d 323 (1981).

## III

The Stationary Engineers Union contends that the Board's reading of Section 8(g) is overly technical. The Union argues that since Kaiser was aware that a sympathy strike was likely and made no objection

to the form of the notice, the notice substantially complied with Section 8(g).

The Board found that the Stationary Engineers Union's notice of intent to respect the picket lines of the Office and Professional Employees Union failed to meet the requirements of Section 8(g) because it did not specify the date or time the Stationary Engineers Union intended to commence its action. It ruled that the date and time requirements of Section 8(g) are mandatory and that the Union's notice fell short of the statutory requirement.

Section 8(g) (29 U.S.C. § 158(g)) provides in relevant part:

> a labor organization before engaging in any strike, picketing or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention.... The notice shall state the date and time that such action will commence.

The Stationary Engineers Union relies on *Biomedical-Applications of New Orleans, Inc.*, 240 NLRB 432 (1979), to support its argument for a relaxed interpretation of Section 8(g). In *Biomedical-Applications*, the Board accepted a notice which did not strictly adhere to the statute, but which was found to represent "substantial compliance" by the union. The union sent a proper notice to the hospital and to the Federal Mediation and Conciliation Service (FMCS). Although the hospital did not receive the notice until more than five weeks later, it had been notified by the FMCS of the details of the impending strike. The postal service, a third-party, was responsible for the delay in delivery. The Board ruled in favor of the union after determining that the employer had actual notice of the strike and that the union had made reasonable efforts to comply with Section 8(g).

The NLRB persuasively argues that "the unique factual situation in *Biomedical*" does not resemble the situation here.

---

1. The fact that Monroe was not fined is no bar to the filing of a charge. *NLRB v. Indiana &*

*Michigan Electric Co.*, 318 U.S. 9, 17–18, 63 S.Ct. 394, 399–400, 87 L.Ed. 579 (1943).

*Biomedical-Applications* involved a question about the timeliness of the receipt of a notice, *not* the specific contents of the union's notice. In *Biomedical-Applications,* the union's notice specified the time and date of expected action. Furthermore, in *Biomedical-Applications* the consequence of the union's apparent failure to satisfy the requirements of Section 8(g) was to destroy the employees' protected status. These employees were discharged for engaging in what was deemed to be an illegal strike against the respondent. The court stated:

> In these particular circumstances, we conclude that the Union was in substantial compliance with Section 8(g) and that to apply Section 8(g) here in such a technical fashion so as to deprive the strikers of their status as employees would constitute an unwarrantedly harsh result not intended by Congress.

*Id.* at 435–36.

The Stationary Engineers Union also cites *Montefiore Hospital & Medical Center v. NLRB,* 621 F.2d 510 (2d Cir.1980) in support of its interpretation of Section 8(g). *Montefiore* is inapposite. In *Montefiore,* the court addressed the definition of the term "labor organization." Specifically, the court ruled that Section 8(g) does not apply to non-union doctors who walked out in sympathy with a union strike. The case does not discuss the "date and time" segment of Section 8(g).

*Hospital and Institutional Workers' Union, Local 250,* 255 NLRB 502 (1981), is more instructive on this issue. In that case, the union informed the employer that it would be submitting a 10-day notice of intention to strike, but failed to state the date on which the strike would commence. The Board held that the use of the word "shall" in Section 8(g) means that the inclusion of the commencement date and time

"is mandatory rather than discretionary." 255 NLRB at 504, *quoting District 1199, National Union of Hospital & Healthcare Employees,* 222 NLRB 212 (1976).

We conclude that the Board acted properly in enforcing Section 8(g) against the Stationary Engineers Union in this case. The date and time provision of Section 8(g) must be applied and enforced in accordance with its express terms. Strict adherence to notice requirements is essential in the area of health care institutions, in light of Congress' concern "that sudden, massive strikes could endanger the lives and health of patients in health care institutions." *Walker Methodist Residence and Health Care Center Inc.,* 227 NLRB 1630, 1631 (1977). Section 8(g) and its legislative history make it clear that Congress was particularly concerned with the necessity that health care institutions be apprised sufficiently in advance of any planned picketing or work stoppages in order to allow the health care institution to take steps to protect the continuity of the health care services it renders to its patients. *District 1199–E, National Union of Hospital and Health Care Employees,* 243 NLRB 23, 24 (1979).

## IV

The Union contends that the Board impermissibly interfered with the Union's right to discipline its members because of a "technical deficiency" in its notice to the employer.[2] The Union insists that it made a reasonable effort to comply with the statutory requirement, and stresses the fact that the hospital never notified it that the notice was legally insufficient. The Stationary Engineers Union emphasizes that in the past the hospital complained when it

---

**2.** The Union also contends with respect to this issue that the Board's order should not be enforced in light of *Machinists Local 1327 v. NLRB,* 725 F.2d 1212 (9th Cir.1984). *Machinists Local 1327* is not dispositive of the issue before us. In *Machinists Local 1327,* we upheld a rule which prohibits a member from accepting employment after resigning from the union in an establishment where a strike or lockout exists. No question has been raised in the matter before us concerning the right of a union to discipline a member for crossing a picket line where a lawful work stoppage has occurred.

felt the notices were inadequate, yet said nothing about it this time.[3]

The Board concluded that the Union violated Section 8(b)(1)(A) by disciplining its members for refusing to engage in activity which is contrary to national labor policy. Here, the Union imposed fines to discipline members for refusing to participate in a strike action which violated Section 8(g).

Section 8(b)(1)(A) of the Act, 29 U.S.C. 158(b)(1)(A), prohibits a union from interfering with the rights guaranteed to employees by Section 7 of the Act, (29 U.S.C. 157). Section 8(b)(1)(A) provides:

> (b) It shall be an unfair labor practice for a labor organization or its agents—
>
> (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: Provided, that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein.

■ Section 8(b)(1)(A) permits a union to enforce its rules by fines and other forms of discipline, but prohibits a union from disciplining members who refuse to engage in activity which is either illegal or unprotected under the Act. The Act protects a union's rule-making and discipline as long as the rule "reflects a legitimate union interest, impairs no policy Congress has

embedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule." *Scofield v. NLRB*, 394 U.S. 423, 430, 89 S.Ct. 1154, 1158, 22 L.Ed.2d 385 (1969).

■ The Board's finding that the Stationary Engineers Union violated Section 8(b)(1)(A) by threatening and fining union members for crossing picket lines was proper. The work stoppage demanded by the Union was in violation of Section 8(g).

This court has previously rejected the position advanced here by the Stationary Engineers Union, in *NLRB v. Longshoremen's Local 30*, 549 F.2d 698 (9th Cir. 1977). In *Longshoremen's Local 30*, the union violated the secondary boycott provisions of the NLRA, and the district court subsequently enjoined the union from picketing. While the picket line was in effect, however, a member of the union had crossed the line. The union brought charges against the employee and fined him for his action. The member then filed an unfair labor practice against the union. The Board held that the union had violated Section 8(b)(1)(A) by fining the employee for crossing a secondary picket line. The Board expunged the fine. On appeal, the

---

**3.** The Union contended at oral argument that the hospital's conduct in not explicitly objecting to the deficiency constituted a waiver of its rights to notice of the date and time of the walkout. This issue is not properly before this court. The Union did not raise this issue in its brief to this court, nor was this position urged before the NLRB or the ALJ. Section 10(e) of the NLRA, 29 U.S.C. § 160(e) provides, in part, that "No objection that has not been urged before the Board ... shall be considered by the courts..." In the absence of 'extraordinary circumstances,' the failure of the respondent to urge an objection in the Board's proceedings forecloses judicial consideration of the objection in enforcement proceedings. *NLRB v. Ochoa Fertilizer Corp.*, 368 U.S. 318, 322, 82 S.Ct. 344, 347, 7 L.Ed.2d 312 (1961).

Even assuming *arguendo* that this issue was properly advanced, we are not persuaded that the Union's position has any merit. The Union offers three citations with respect to the question. Two of its cases hold that an employer can waive its right under Section 8(d) of the Act, 29 U.S.C. § 158(d) to receive timely notice of a

union's desire to terminate or modify a current collective bargaining agreement. *Sun World, Inc.*, 271 NLRB No. 8 (1984); *Hassett Maintenance Corp.*, 260 NLRB 1211 (1982). The third case holds that a union may not waive the right of employees to distribute campaign literature for or against the union on nonworking time and in nonworking areas of their employer's plant. *NLRB v. Magnavox Co. of Tennessee*, 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974).

The cases cited by the Stationary Engineers Union are inapplicable to the issues presented in this case because they do not deal with Section 8(g). As discussed in the text, strong policy reasons compel strict compliance with the provisions of Section 8(g). Congress has imposed special restrictions on labor actions against health service facilities in order to protect hospital patients whose health might be affected by picketing or work stoppages. *See Hospital and Institutional Workers' Union, Local 250*, 255 NLRB 502 (1981); *District 1199–E, National Union of Hospital and Health Care Employees*, 243 NLRB 23 (1979); *Walker Methodist Residence and Health Care Center*, 227 NLRB 1630 (1977).

union attempted to justify the fine as a "purely internal affair." This court rejected the union's argument. The court agreed with the Board that: "respondent's fine against [the member] was not privileged by the proviso of Section 8(b)(1)(A) for the simple reason that its purpose was to discipline [him] for refusing to honor an illegal picket line ..." 549 F.2d at 702. *See also NLRB v. Retail Clerks Union, Local 1179*, 526 F.2d 142, 146 (9th Cir.1975) (union discipline is invalidated where it impairs national labor policy when conducted as a means of compelling members to strike in violation of National Labor Relations Act).

As in *Longshoremen's Local 30*, the union's attempted disciplinary action in the present case does not fall within the internal affairs exemption of Section 8(b)(1)(A). It is contrary to the national labor policy, in light of the Stationary Engineers Union's 8(g) violation.

Substantial evidence on the record taken as a whole supports the Board's decision; hence, the challenged Order will be ENFORCED.