INTERNATIONAL MOLDERS AND ALLIED WORKERS UNION, LOCAL NO. 164, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Pacific Steel Casting Company, Intervenor.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL MOLDERS AND ALLIED WORKERS UNION, LOCAL NO. 164, Respondent.

Nos. 84-7433, 84-7516.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 15, 1985.

Decided July 9, 1985.

Before WALLACE and POOLE, Circuit Judges, and STEPHENS,* District Judge.

WALLACE, Circuit Judge:

This case requires us to review a decision and order by the National Labor Relations Board (Board) holding that a union committed an unfair labor practice by disciplining some members for failing to strike. We grant enforcement of the Board's order.

## I

The International Molders and Allied Workers Union, Local No. 164 (union) negotiated a collective bargaining agreement with the Pacific Steel Casting Company (Pacific Steel). The agreement provided for grievance procedures ending in final and binding arbitration. It also contained a blanket no-strike clause.

Pacific Steel discharged an employee who then filed a grievance. The grievance went to arbitration, and the arbitrator ordered Pacific Steel to reinstate the discharged employee with back pay. Pacific Steel refused to reinstate the employee pending a petition to the appropriate state court to vacate the arbitration award. The union called for a strike vote, and a majority of its members voted to walk out. The union's business representative warned the membership that those who failed to honor the strike would be fined, discharged from Pacific Steel, and blacklisted.

Several union members nevertheless did not honor the strike. The strike lasted about two weeks until a federal district court enjoined it. The union imposed $300 fines on each of its members who did not honor the strike. The union warned that failure to pay the fines by a specified date would result in suspension from the union, employment termination, or legal action. About the same time, a state court confirmed the arbitration award, and Pacific Steel reinstated the discharged employee.

The nonstriking employees failed to pay their fines by the specified date. The union held a hearing to determine what course of action to take. At the hearing, the employees informed the union that they considered the fines to be illegal and that they would not pay any money until the legality of the fines was established. The union officials therefore suspended the employees from the union.

Pacific Steel filed an unfair labor practice charge against the union, arguing that the union had violated section 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A), by making the prestrike threats to enforce the strike vote and by imposing the poststrike fines and making the threats to secure payment. The Regional Director found merit to the charge and issued a complaint. The Board concluded that the prestrike threats of job loss and blacklisting were unlawfully coercive within the meaning of section 8(b)(1)(A), regardless of whether the subsequent strike was protected activity, and therefore amounted to an unfair labor practice. The Board also concluded that the poststrike internal discipline was an unfair labor practice because the strike had been conducted contrary to the no-strike clause and was therefore unprotected activity. The Board reasoned that the no-strike clause continued to bind the union while Pacific Steel sought judicial review of the arbitration award because the collective bargaining agreement did not expressly preclude the

---

* Honorable Albert Lee Stephens, Jr., United States District Judge, Central District of California, sitting by designation.

clause's application during this period and the union offered no extrinsic evidence to show that the parties intended such a limitation.

## II

■ The union does not challenge the Board's holding that the prestrike threats amounted to an unfair labor practice. It also concedes, as it must, that a union commits an unfair labor practice when it imposes internal discipline on any of its members for failure to participate in unprotected activity. *NLRB v. Stationary Engineers, Local 39*, 746 F.2d 530, 534 (9th Cir.1984). What the union challenges is the Board's interpretation of the no-strike clause as a waiver of the right to strike over arbitrable grievances during both the arbitration proceeding and judicial review of it. If the Board's interpretation is correct, then the strike was unlawful and the union committed an unfair labor practice by disciplining its members who failed to honor the strike. *See id.*

■ Our standard for reviewing the Board's interpretation of a collective bargaining agreement is deferential. We determine only whether "the Board's interpretation is reasonable and not inconsistent with the Act's policies." *NLRB v. Southern California Edison Co.*, 646 F.2d 1352, 1362 (9th Cir.1981) (*Edison*). We do not substitute our judgment for the Board's.

■ Union members ordinarily have the right to strike. *See* 29 U.S.C. § 157; *Edison*, 646 F.2d at 1362. The union may bargain this right away in a collective bargaining agreement, *see Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 280, 76 S.Ct. 349, 356, 100 L.Ed. 309 (1956) (*Mastro*); *Edison*, 646 F.2d at 1364, but generally such waivers must be clearly and unmistakably expressed, *id.* We have recognized that this rule of narrow construction sufficiently justifies the Board's policy that, "[a]bsent explicit agreement to the contrary, the no-strike obligation clause is limited to disputes over arbitrable issues." *NLRB v. Sav-On Drugs, Inc.*, 728 F.2d

1254, 1257 (9th Cir.1984) (en banc) (*Sav-On*); *see also Edison*, 646 F.2d at 1367.

■ In this case, the union agreed to a blanket waiver of its members' right to strike for the duration of the collective bargaining agreement. The relevant language from the agreement states: "During the life of this agreement there shall be no ... strikes on the part of the Union." The agreement identifies one express exception to this waiver: it reserves the employees' right to engage in sympathy strikes. The existence of this limited exception implies that the parties understood the waiver to be general.

Under the Board's current policy, this broad and unqualified waiver is presumptively limited to the scope of the agreement's arbitration process because there is no evidence of an agreement disavowing the implied coterminous construction. *See Sav-On*, 728 F.2d at 1257; *Edison*, 646 F.2d at 1364, 1367. But whether the coterminous presumption also impliedly limits the duration of the waiver to the period during which judicial review of an arbitration award is pending or only during the arbitration proceeding itself depends on whether judicial review is ordinarily considered part of a final and binding arbitration process. Because we conclude that a request for judicial enforcement may be viewed as the final step in the arbitration process, *Sea-Land Service v. International Longshoremen's Association*, 625 F.2d 38, 41–42 (5th Cir.1980) (involving how long an anti strike injunction based on an arbitration clause may continue), the Board's interpretation of the no-strike clause is reasonable. The arbitration clause does state that "[t]he decision of the arbitrator shall be final and binding upon" the union and Pacific Steel. But neither this nor any other language of the arbitration clause necessarily evidences an agreement that judicial enforcement is not part of the arbitration process and the union did not offer any extrinsic evidence tending to support the existence of such an agreement. Thus, the Board's interpretation of the contract is

not unreasonable and is not inconsistent with the Act's policies.

The union argues that the "clear and unmistakable" rule in interpreting a waiver makes the Board's conclusion unreasonable. It essentially argues that the only reasonable interpretation of a blanket no-strike clause under this rule of construction is that such a clause presumptively applies only to contingencies that were specifically foreseen and individually identified beforehand as being within its coverage. Because there is no evidence that Pacific Steel and the union contemplated the specific question of whether the no-strike clause would apply pending judicial review of an arbitration award, the union argues that the blanket no-strike clause cannot reasonably be interpreted to cover this contingency.

The union's argument takes the "clear and unmistakable" rule of construction much too far. If the rule were extended to this extreme, it would effectively ban all blanket waivers. If only those contingencies specifically contemplated were contained in the waiver, there would be none remaining under the blanket restricting strikes or lockouts. We do not believe that a prohibition of blanket waivers is in the long-term interest of unions, employees, or employers. Moreover, we do not believe the "clear and unmistakable" rule of construction compels such a result. Otherwise, we do not see how courts could imply a no-strike duty from the mere existence of an arbitration clause. *See Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 381, 94 S.Ct. 629, 638, 38 L.Ed.2d 583 (1974); *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 104–06, 82 S.Ct. 571, 577–78, 7 L.Ed.2d 593 (1962). It is therefore not unreasonable for the Board to conclude that even if the narrow construction principle requires us to presume that a blanket waiver is impliedly coterminous with the arbitration process, it does not require a presumption that the arbitration process ends earlier, for purposes of contract construction, than judicial review proceedings.

None of the cases cited by the union is to the contrary. In holding that a blanket waiver does not apply to strikes designed to force an employer to pressure a third party, the Board in *Pacemaker Yacht Co.*, 253 N.L.R.B. 828, 830 (1980), used broad language that might tend to support the union's position. But the Third Circuit denied enforcement of *Pacemaker Yacht* because it disagreed with the Board's use of the "clear and unmistakable" rule. *Pacemaker Yacht Co. v. NLRB*, 663 F.2d 455, 457–59 (3d Cir.1981). We find its reasons for doing so persuasive. The Third Circuit stated:

> When ... a [blanket] no-strike clause is not limited by the arbitration clause, the employer need not introduce evidence that the parties intended the no-strike clause to prohibit precisely the type of strike that actually occurred. All that is required is that a comprehensive waiver extending beyond the arbitration clause be "clear and unmistakable."

*Id.* at 458. We see no reason to alter the essence of this rule when a no-strike clause is presumptively limited by an arbitration clause. If the waiver is clearly and unmistakably comprehensive, it may reasonably be given comprehensive effect.

The Board's decision in *International Union of Operating Engineers, Local Union 18*, 238 N.L.R.B. 652, 654 (1978) (*Engineers*), is also not to the contrary. Moreover the Board recently overruled the reasoning in that case. *See Indianapolis Power & Light Co.*, 273 N.L.R.B. No. 211 (Jan. 31, 1985). In *Engineers*, the Board used the "clear and unmistakable" rule to justify its decision that blanket no-strike clauses presumptively do not extend to sympathy strikes. But the Board's use of the "clear and unmistakable" rule to create this exception to blanket no-strike clauses does not compel it to create other exceptions. Therefore, the now overruled *Engineers* case does not render the Board's decision in this case unreasonable.

ORDER ENFORCED.