SHELBY COUNTY HEALTH CARE CORPORATION, d/b/a The Regional Medical Center at Memphis, Plaintiff,

v.

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, LOCAL 1733, Defendant.

No. 90–2444 GA.

United States District Court, W.D. Tennessee, W.D.

Jan. 31, 1991.

J. Edward Wise, Paul E. Prather, John W. Simmons, Memphis, Tenn., for plaintiff.

Stephen H. Biller, Memphis, Tenn., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND VACATING ARBITRATOR'S AWARD

GIBBONS, District Judge.

Before the court are the parties' cross-motions for summary judgment. Plaintiff, The Regional Medical Center at Memphis (the Med), filed this civil action asking that the court vacate an arbitrator's award in favor of the defendant, American Federation of State, County and Municipal Employees, Local 1733 (AFSCME or the union), and its member employee, Deborah Howery. Defendant filed a counterclaim requesting confirmation of the arbitration award and attorney's fees.

On May 16, 1989, Deborah Howery was discharged due to her participation in an illegal strike at the hospital beginning on April 28, 1989. On April 28, 1989, the Med demanded the illegal strike be terminated by 1:00 p.m., April 28, 1989. The Med gave notice that, if termination did not occur, it would begin disciplining or discharging employees who did not return to work. Plaintiff's Exhibit 3. The strike continued throughout most of the day on April 28. On May 1, 1989, the Med began issuing suspensions to those employees who had participated in the strike, including Howery. By May 4, 1989, a Settlement Agreement had been reached between the union and the Med. Pursuant to such Agreement, Howery remained on paid investigatory suspension until May 16, at which time she was terminated, along with sixteen other employees who participated in the strike. Arbitrator's Award at 5; Plaintiff's Exhibit A.

Pursuant to the terms of the Memorandum of Understanding in effect between the parties at the time of Howery's discharge and the Settlement Agreement, the Union filed a grievance on behalf of Howery contesting her discharge. When the grievance was not satisfactorily resolved, the matter was submitted to arbitration. The arbitrator found that Howery's behavior was clearly wrong. He also found, however, that her termination was too harsh and unjust and was therefore without just cause. The arbitrator directed the Med to reinstate Howery with full seniority, but without back pay. Arbitrator's Award at 17; Plaintiff's Exhibit A.

Plaintiff argues first that the arbitration award should be vacated as contrary to the public policy set forth in the National Labor Relations Act, 29 U.S.C. §§ 158(d) and (g). Generally, "[t]he standard of review in arbitration cases is very narrow." *Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987) (citation omitted). "[C]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

The Supreme Court, however, has recognized an exception to the limited judicial review of arbitration awards, holding that a court may not enforce arbitration awards that are contrary to public policy. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). "[T]he question of public policy is ultimately one for resolution by the courts." *Id.* at 766, 103 S.Ct. at 2183. *Grace* established

the elements necessary for a court to vacate an arbitrator's award on public policy grounds. The asserted public policy must be explicit, well-defined and dominant. Furthermore, the public policy is to be ascertained by reference to laws and legal precedent and not just from general considerations of supposed public interests. *Id.* at 766, 103 S.Ct. at 2183.

In *Misco,* the Supreme Court reaffirmed the public policy exception as set forth in *Grace,* reiterating that the exception is narrow. 484 U.S. at 43, 108 S.Ct. at 373. The *Misco* Court further held that to vacate an arbitrator's award as conflicting with public policy, a clear link between enforcement of the arbitrator's award and violation of the public policy must exist. *Id.*

■ The first question for the court, then, is whether the public policy set forth in §§ 158(d) and (g) meets the "explicit, well-defined and dominant" standard mandated by *Grace* and *Misco.* Specifically, § 158(g) of the NLRA provides that strikes at a health care institution are prohibited unless ten days notice of the impending strike is given to the institution:

> A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention.... The notice shall state the date and time that such action will commence. The notice, once given, may be extended by the written agreement of both parties.

29 U.S.C. § 158(g). Furthermore, § 158(d) provides that any employee who engages in a strike during the notice period loses his status as an employee:

> Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, *shall lose*

*his status as an employee of the employer engaged in the particular labor dispute,* for the purposes of sections 158, 159, and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer.

29 U.S.C. § 158(d) (emphasis added).[1]

As evidenced by § 158, Congress chose to treat the health industry uniquely, primarily because of its importance to human life:

> It is important to remember that hospitals are not factories or retail establishments, and patients are not raw material or merchandise. Hospitals are for human beings and actions pursuant to this legislation must take this fact into account.

Cong.Rec. S9641, May 2, 1974 (cited in *Dist. 1199, Nat'l Union of Hosp. and Health Care Employees,* 232 NLRB 443, 444 (1977)). "Strict adherence to notice requirements is essential in the area of health care institutions, in light of Congress' concern 'that sudden, massive strikes could endanger the lives and health of patients in health care institutions.'" *N.L.R.B. v. Stationary Engineers, Local 39,* 746 F.2d 530, 533 (9th Cir.1984) (quoting *Walker Methodist Residence and Health Care Center, Inc.,* 227 NLRB 1630, 1631 (1977)). The Ninth Circuit further noted that

> "[Section 158(g)] and its legislative history make it clear that Congress was particularly concerned with the necessity that health care institutions be apprised sufficiently in advance of any planned picketing or work stoppages in order to allow the health care institution to take steps to protect the continuity of the health care services it renders to its patients."

*Id.* (citation omitted).

The court finds that §§ 158(d) and (g) satisfy the *Grace* test, establishing an ex-

---

1. Section 158(d)(A) contains a further special notice provision applicable to unions representing employees of health care institutions. That subsection requires that if a union intends to terminate or modify a collective bargaining agreement, and the "collective bargaining involves *employees of a health care institution,* ... the notice [given to the health care institution] ... shall be ninety days," rather than the usual sixty days notice. 29 U.S.C. § 158(d)(A) (emphasis added).

plicit, well-defined, and dominant public policy intended to protect the public safety. *See Professional Admrs., Ltd. v. Kopper–Glo Fuel, Inc.,* 819 F.2d 639, 643 (6th Cir. 1987) (finding that § 158(d) articulates a "well-defined and dominant" public policy). Together, these sections insure the uninterrupted provision of competent health care by protecting health care institutions from impromptu strikes and by mandating the discharge of employees who threaten public safety through their participation in illegal strikes. As evidenced by the express terms of the statute, the public policy is clearly against the reinstatement of employees who violate § 158.

■ The court also finds a clear link between enforcement of the arbitrator's award and violation of the public policy enunciated in §§ 158(d) and (g), satisfying the *Misco* requirement. "Although the scope of federal judicial review of arbitration awards is excruciatingly narrow, it does cover the situation where the arbitrator has made an order that federal law forbids." *Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191, 1197 (7th Cir.1987).

■ The arbitration award in this case directly contravenes the mandatory provisions of § 158, by requiring plaintiff to reverse an action that § 158 mandates. Specifically, the award orders plaintiff to reinstate Howery after she was lawfully terminated pursuant to the Settlement Agreement and § 158(d) for engaging in an illegal strike within the notice periods provided by §§ 158(d) and (g). The union admitted that the strike was in violation of § 158(g), and the arbitrator found that Howery assumed a leadership role during the strike. Arbitrator's Award at 14–15. Therefore, §§ 158(d) and (g) mandate that Howery "*shall lose* [her] status as an employee" and the loss of such status "shall terminate *if and when* [the employee] is reemployed by such employer." 29 U.S.C. § 158(d) (emphasis added).

Not only does the statute require Howery's dismissal, but it confers upon the employer discretion regarding whether or not to reinstate Howery. By leaving the reinstatement issue to the employer's discretion, Congress presumably has decided that the employer is in the best position to decide whether continued employment by the discharged employee will further conflict with the public policy set forth in § 158. An employee discharged because of a § 158 violation has already once violated the public policy of continuous and competent health care, and the employer must decide whether reinstatement of that employee will further endanger the public safety.

■ In *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,* the Ninth Circuit examined what was required for reinstatement of a discharged employee to violate public policy. 886 F.2d 1200 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). The court stated that if a court relies on public policy to vacate an arbitrator's award which reinstated an employee, it must be a policy that bars reinstatement. *Id.* at 1212. The policy must be one "that specifically militates against the relief ordered by the arbitrator." *Id.* at 1212–13.

This court agrees with the Ninth Circuit's standard for vacating an arbitral award ordering reinstatement. The court finds that the award in this case violates the policy of § 158 mandating termination and leaving reinstatement to the employer's discretion. The award, by ordering Howery's reinstatement, usurps from the employer the statutory discretion to determine reinstatement. Therefore, a clear link exists between enforcing the award and violating the public policy contained in § 158.

Plaintiff also argues that the arbitrator exceeded his authority in rendering the award by deciding that just cause for Howery's termination did not exist. Essentially, plaintiff asserts that the settlement agreement does not contain a just cause provision, and that all rights of employees not specified in the Settlement Agreement, including a just cause provision, were waived with regard to any disciplinary action for participation in the strike. Settlement Agreement at 2; Plaintiff's Exhibit

C. While the court is also inclined to agree with plaintiff's position on this issue, it is unclear from this record whether plaintiff even raised or contested before the arbitrator the issue of whether a just cause standard was appropriate under the settlement agreement. In fact, it appears probable, from the language of the award, that plaintiff did not raise this issue. Under these circumstances, the court does not reach the issue of determining whether the arbitrator exceeded his authority in applying a just cause standard to Howery's termination.

The plaintiff's motion for summary judgment is granted and the defendant's motion is denied. Accordingly, the arbitrator's award ordering reinstatement is vacated.

IT IS SO ORDERED.