967 F.2d 1091
 140 L.R.R.M. (BNA) 2680, 122 Lab.Cas. P 10,244
 SHELBY COUNTY HEALTH CARE CORPORATION, d/b/a The Regional
Medical Center at Memphis, Plaintiff-Appellee,
v.
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, LOCAL 1733, Defendant-Appellant.
 No. 91-5291.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 30, 1992.
Decided June 24, 1992.
Rehearing En Banc Denied Aug. 5, 1992.
 
 Paul E. Prather, argued, briefed, J. Edward Wise, John W. Simmons, Armstrong, Allen, Prewitt, Gentry, Johnstone & Holmes, Memphis, Tenn., for plaintiff-appellee.
 Stephen H. Biller, briefed, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Tenn., Jeffrey B. Demain, Marsha S. Berzon, argued, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, Cal., for defendant-appellant.
 Before: BOGGS and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 This case arose from an arbitration between Shelby County Health Care Corporation, which operates the Regional Medical Center at Memphis ("the Med"), and a union representing the employees of the Med, Local 1733 of the American Federation of State, County and Municipal Employees. Deborah Howery, the grievant in the arbitration, participated in an illegal strike at the Med by members of the union. The Med discharged Howery for this conduct, but she was later ordered reinstated by an arbitrator pursuant to the terms of the strike settlement agreement executed by the Med and Local 1733. The Med filed suit in district court to vacate the arbitration award and the union counterclaimed to enforce it.
 
 
 2
 Both parties filed motions for summary judgment and the district court granted summary judgment to the Med, vacating the award as contrary to the public policy embodied the National Labor Relations Act, 29 U.S.C. §§ 158(d) and (g). The basis for the court's ruling was its conclusion that because the grievant had participated in a strike that was not preceded by a ten-day notice and therefore violated 29 U.S.C. § 158(g), the arbitration award reinstating her violated public policy. The union appeals. For the reasons set forth below, we reverse the judgment of the district court.
 
 
 3
 * Both parties accept the underlying facts as found by the arbitrator. The Med is a large comprehensive health care facility whose bargaining unit employees are represented by Local 1733. The Med and Local 1733 were parties to a collective bargaining agreement that was effective from July 1, 1987 until June 30, 1990. Deborah Howery was a pharmacy technician and had been employed by the Med since 1965. She was represented by the union and covered by the collective bargaining agreement. Howery also served as the chapter chairperson for Local 1733 and was the highest ranking union official working at the Med.
 
 
 4
 On April 25, 1989, the union workers at the hospital went on strike without providing any advance notice to the hospital. Howery, along with several hundred other employees in her bargaining unit, participated in the strike. The Med contends that Howery helped to instigate and lead the "wildcat" strike and the arbitrator specifically found that:
 
 
 5
 Grievant [Howery] went to the work areas of other employees and encouraged them to leave their jobs in order to attend a meeting.... She left work without permission, and she encouraged others to do the same. As [the Med] contends, there is no evidence in the record of any other employee who participated in the strike to this same degree.... [T]he grievant was a leader in the work stoppage and did not respond to management's directive to return to work.
 
 
 6
 The Med informed the leaders of the union, including Howery, that the union was required to cease all strike activities and to return all bargaining unit employees to work immediately. The hospital demanded that the union take all lawful steps to prevent any further work stoppages. The Med also advised the union that if the employees did not stop the strike and return to work by no later than 1:00 p.m. on Friday, April 28, 1989, it would begin disciplining (up to and including discharge) and replacing employees.
 
 
 7
 The strike continued throughout the day of April 28 and approximately 425 employees continued to participate. However, by the first shift on April 29, most employees had returned to work. On May 1, 1989, the Med began issuing suspensions to employees who participated in the strike, including Howery. The arbitrator found that Howery refused to accept her suspension and encouraged others to do the same.
 
 
 8
 On May 4, 1989, the union and the Med executed a settlement agreement regarding the disciplining of employees who participated in the strike. The settlement agreement provided the following: (1) an admission by Local 1733 that the strike violated the no-strike clause of the union contract and 29 U.S.C. § 158(g); (2) the Med could impose discipline on striking employees in varying degrees according to their level of participation; (3) most employees would be suspended for four days and then allowed to return to work; (4) 37 employees believed to have engaged in more serious strike conduct would remain suspended and subject to further discipline, but that such discipline could be protested through the grievance and arbitration procedure established in the collective bargaining agreement; and (5) the union waived any claims concerning the disciplinary actions other than the grievance and arbitration procedure.
 
 
 9
 The 37 more serious participants in the strike, including Howery, remained on suspension pending the Med's investigation into their levels of participation. The Med eventually fired Howery and 16 other employees for their roles in the strike. The union filed a grievance protesting Howery's discharge, processed it through the steps of the grievance procedure, and presented it to a neutral arbitrator. The arbitrator ruled that under the settlement agreement the usual progressive disciplinary principles provided for in the collective bargaining agreement did not apply, but that discipline could be imposed according to degree of participation in the strike. The arbitrator also found that Howery had been a leader in the strike and therefore deserved a stricter penalty than most other employees.
 
 
 10
 The arbitrator found, however, that it was the union's executive director, a non-employee, who had instigated the strike, not Howery. The arbitrator also held that there were several compelling factors that made discharge too harsh a penalty. Howery was a good, long-term employee; her conduct during the strike was not typical for her; she reasonably believed that she was not risking her job by participating in the strike, and was not fairly warned otherwise; and she was encouraged by management to help return employees to work and she agreed to do so. Taking these considerations into account, the arbitrator reinstated Howery with full seniority, but without backpay. The result of the ruling was that Howery was suspended from her job without pay for more than one year.
 
 
 11
 The Med filed suit in district court seeking to have the arbitrator's award vacated. The Med filed a motion for summary judgment and the union filed a motion for summary judgment to have the arbitration award enforced. The district court granted summary judgment in favor of the Med and vacated the arbitrator's decision as contrary to public policy. 756 F.Supp. 349. Local 1733 appeals.
 
 II
 
 12
 This court reviews a grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Summary judgment is appropriate in cases where there exists no genuine issue of material fact and where one party is entitled to judgment at a matter of law. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476-81 (6th Cir.1989); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Both parties agree to the material facts in this case and their dispute involves a legal question regarding whether the arbitrator's decision should be vacated or enforced. As such, this case is appropriate for summary judgment.
 
 
 13
 In this case, the district court vacated the outcome of an arbitration procedure agreed to by both parties to this dispute. It is well established that courts should play only a limited role in reviewing the decisions of arbitrators. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 367, 98 L.Ed.2d 286 (1987); Interstate Brands v. Teamsters Local 135, 909 F.2d 885, 888 (6th Cir.1990). In Misco, the Supreme Court, citing the landmark labor case of Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), reaffirmed its historically deferential attitude toward arbitration. Under this deferential standard of review, courts are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misinterpretation of the contract. Misco, 484 U.S. at 36, 108 S.Ct. at 367. Where the parties have agreed to submit a matter to an arbitrator, the function of a reviewing court is very limited and the Misco court described the scope of review as follows:
 
 
 14
 Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of an arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject the award on the ground that the arbitrator misread the contract.... If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined.... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.
 
 
 15
 Misco, 484 U.S. at 37-38, 108 S.Ct. at 367.
 
 
 16
 In this case, the district court vacated the arbitrator's decision because the court found that the decision was contrary to the public policy set out in 29 U.S.C. 158(d) and (g). A court may refuse to enforce an arbitration award that violates public policy. Id. at 42, 108 S.Ct. at 367; W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). This is a "specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." Misco, 484 U.S. at 42, 108 S.Ct. at 367. However, the public policy exception to the general deference afforded arbitration awards is very limited, and may be exercised only where several strict standards are met. First, the decision must violate some explicit public policy that is well defined and dominant. Id. at 43, 108 S.Ct. at 367. This dominant public policy is to be ascertained by reference to laws and legal precedents and not from general considerations of supposed public interests. Id., quoting W.R. Grace, 461 U.S. at 766, 103 S.Ct. at 2183; Muschany v. United States, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). Second, the conflict between the public policy and the arbitration award must be explicit and clearly shown. Misco, 484 U.S. at 43, 108 S.Ct. at 367. Further, it is not sufficient that the "grievant's conduct for which he was disciplined violated some public policy or law," rather, the relevant issue is whether the arbitrator's award "requiring the reinstatement of the grievance ... violated some explicit public policy." Interstate Brands, 909 F.2d at 893. The courts have emphasized that this exception is limited and "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." Misco, 484 U.S. at 43, 108 S.Ct. at 367.
 
 
 17
 The district court invoked this limited exception to vacate the arbitrator's decision reinstating Howery after the Med had terminated her for participating in the strike. The district court held that the arbitrator's reinstatement of Howery violated the well-defined and dominant public policy outlined in 29 U.S.C. 158(d) and (g). Section 158(g) prohibits strikes by workers at health care institutions unless at least ten days notice of the impending strike is given to the institution. Section 158(d) further provides:
 
 
 18
 Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute, for purposes of sections 158, 159 and 160 of this title, but such a loss of status for such employee shall terminate if and when he is reemployed by such employer.
 
 
 19
 Section 158(a) normally protects striking employees from termination because of their strike activity. However, under § 158(d), an employee who engages in a strike within the notice period of § 158(g) loses the protection of § 158(a). The statute therefore leaves the fate of striking employees who violate the notice provisions of § 158(g) in the hands of the employer. The NLRA does not infringe upon an employer's discretion in deciding to discharge or retain employees who have lost the protection of § 158(a).
 
 
 20
 The district court ruled that §§ 158(d) and (g) constitute an explicit, well-defined, and dominant public policy. The court also found that the arbitration award in this case directly contravened the public policy codified at § 158. In granting summary judgment to the Med and vacating the decision of the arbitrator, the district court held the following:
 
 
 21
 The arbitration award in this case directly contravenes the mandatory provisions of § 158, by requiring plaintiff to reverse an action that § 158 mandates. Specifically, the award orders plaintiff to reinstate Howery after she was lawfully terminated pursuant to the Settlement Agreement and § 158(d) for engaging in an illegal strike within the notice periods provided by §§ 158(d) and (g). The union admitted that the strike was in violation of § 158(g), and the arbitrator found that Howery assumed a leadership role during the strike. Therefore, §§ 158(d) and (g) mandate that Howery "shall lose [her] status as an employee" and the loss of such status "shall terminate if and when [the employee] is reemployed by such employer." 29 U.S.C. § 158(d).
 
 
 22
 Not only does the statute require Howery's dismissal, but it confers upon the employer discretion regarding whether or not to reinstate Howery. By leaving the reinstatement issue to the employer's discretion, Congress presumably has decided that the employer is in the best position to decide whether continued employment by the discharged employee will further conflict with the public policy set forth in § 158. An employee discharged because of a § 158 violation has already once violated the public policy of continuous and competent health care, and the employer must decide whether reinstatement of that employee will further endanger the public safety.
 
 
 23
 The court finds that the award in this case violates the policy of § 158 mandating the termination and leaving reinstatement to the employer's discretion. The award, by ordering Howery's reinstatement, usurps from the employer the statutory discretion to determine reinstatement. Therefore, a clear link exists between enforcing the award and violating the public policy contained in § 158.
 
 
 24
 Memorandum and Order, at 6-7.
 
 
 25
 We agree that § 158 sets out a clear and well-defined statement of public policy. Professional Administrators v. Kopper-Glo Fuel, 819 F.2d 639, 643 (6th Cir.1987). However, the arbitrator's decision in this case is not contrary to the public policy embodied in that section. Section 158 provides that an employee engaged in an illegal strike loses his status as an employee "for purposes of sections 158, 159 and 160" of the NLRA. In other words, under § 158, an employee who participates in a strike that violates the notice provisions of § 158(g) loses the protection of the Act. Methodist Hospital of Kentucky, Inc. v. NLRB, 619 F.2d 563, 565 (6th Cir.), cert. denied, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). Section 158(d) does not mandate the discharge of any individual participating in an illegal strike, it merely deprives that individual of certain statutory rights. The employer then has the discretion to either discharge or retain the employee. If the employer decides to retain the employee, that employee then regains the protection of the Act pursuant to § 158(d). In other words, an employee does not forfeit forever the protection of the NLRA by engaging in an illegal strike. The employee is unprotected only until the employer exercises the discretion implicitly granted by § 158. Since the employee loses the protection of the Act because of his conduct, the employer is therefore not barred from terminating the employee for participating in the strike. But once the employer decides not to discharge the employee, that employee is once again brought under the protective mantle of the NLRA.
 
 
 26
 In this case, the Med did not fire Howery at the time of the strike. Rather, it exercised the discretion created by § 158 by entering into a settlement agreement with the union in an effort to resolve the strike. The issue under the public policy exception to the general rule of deference toward the decisions of arbitrators is whether the arbitrator's decision, not Howery's conduct, violated public policy. Interstate Brands, 909 F.2d at 893. The arbitrator in this case was acting well within the bounds of the settlement agreement entered into by the Med. In order to settle the strike, the Med executed an agreement by which it could discipline employees according to their level of participation in the strike, but which also allowed those discipline decisions to be challenged through the grievance and arbitration procedure established in the collective bargaining agreement. So, in a sense, the Med bargained away a bit of its unfettered discretion to terminate all of the employees who participated in the illegal strike in order to induce most of the employees to return to work.
 
 
 27
 Therefore, the settlement agreement, and the arbitrator's action resulting from that agreement, are perfectly consistent with the policy established in § 158. The statute allows the Med to do what it wants to with illegally striking employees by withdrawing the statutory rights of those employees. The Med could terminate them or it could invite them all back to their jobs without consequence. In addition, under the principle that the greater power includes the lesser, the Med could decide on some compromise solution as it did here. Under the settlement agreement, the Med chose to circumscribe some of its discretion. The Med's right to impose discipline on these employees was limited, by its own choice, by allowing the union to challenge any of its discipline decisions regarding the 37 "most serious offenders" before a neutral arbitrator. In return, the union waived any claims that might arise out of the Med's disciplinary actions other than the agreed upon grievance and arbitration procedure.
 
 
 28
 So, the district court is wrong when it says that the arbitrator's award violates "the policy of § 158 mandating the termination and leaving reinstatement to the employer's discretion." First, the court misinterprets the functional effect of § 158. That section does not mandate the termination of, nor does it somehow automatically terminate, employees who engage in illegal strikes. It merely withdraws the protection of the Act from such employees, thereby allowing, but not requiring, termination. The matter is left to the discretion of the employer, and the statute itself says nothing about how this discretion should be exercised.
 
 
 29
 Second, the court incorrectly characterized the arbitrator's decision as violating public policy by somehow taking away the Med's discretion to terminate these employees. Contrary to the opinion of the district court, the arbitrator's decision did not "usurp" the Med's discretion, but merely enforced the Med's chosen circumscription of its discretion outlined in the settlement agreement it freely entered into with the union. The settlement agreement was presumably a mutually beneficial transaction, with each party receiving consideration in return for its promise. The Med gave up some of its own discretion in determining the fate of the employees who participated in the illegal strike in an effort to induce most of its employees to come back to work. The employees agreed to end their strike in return for the Med's assurance that the majority of its employees would receive only four days' suspension, while the 37 more serious strike participants who would be subject to more serious penalties would be allowed to challenge such discipline through the grievance and arbitration procedure. The law did not require the Med to enter into this agreement, but granted the Med unfettered discretion in resolving this matter. This court, however, will enforce the agreement that the Med freely entered into, even though the Med now appears to be unhappy with the choice it made.
 
 
 30
 The district court's opinion and the Med's arguments to this court would render that settlement agreement meaningless. We will not allow the Med to use its self-serving and erroneous interpretation of § 158 to nullify, as a practical matter, the express promise it made in the settlement agreement. Under the Med's argument, it would get the benefit of agreeing to the arbitration, but can now nullify the results of an arbitration it doesn't like. In the words of Macbeth, this would "keep the word of promise to our ear / And break it to our hope." William Shakespeare, Macbeth, act V, sc. vii, ll. 47-48. The Med made all of its disciplinary decisions subject to the review of the arbitrator. The Med certainly did not suppose, and it cannot assert now, that it expected the arbitrator to be a rubber stamp for all of its decisions. It cannot be said, given the settlement agreement, that the arbitrator somehow violates public policy whenever he renders a decision contrary to the Med.
 
 
 31
 In sum, we hold that the decision of the arbitrator did not violate § 158. That decision did not take away the discretion left to the Med, but was a product of the settlement agreement that the Med executed within the bounds of its discretion. The district court lost sight of the fact that the Med did exercise its statutory discretion in this case. The Med decided to allow its discipline decisions to be submitted to arbitration and, as such, it is bound by the results of that arbitration. By vacating the result of the agreed-upon procedure, the district court itself, in essence, frustrated the agreement that was a product of the Med's previously-exercised discretion.
 
 III
 
 32
 For the reasons given, we REVERSE the judgment of the district court. We REMAND this case to that court with instructions to enter an order enforcing the arbitrator's decision.