In the Matter of the Arbitration between
**FILS ET CABLES D'ACIER DE LENS,**
Petitioner and Cross-Respondent,

v.

**MIDLAND METALS CORPORATION,**
Respondent and Cross-Petitioner.

No. 83 Civ. 7073 (WCC).

United States District Court,
S.D. New York.

March 29, 1985.

Surrey & Morse, New York City, for petitioner and cross-respondent Fils et Cables D'Acier de Lens; Barry R. Satine, New York City, of counsel.

Moses & Singer, New York City, for respondent and cross-petitioner Midland Metals Corp., Arnold A. Jaffe, Richard W. Brewster, David B. Picker, New York City, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This controversy arises out of two 1980 contracts by which petitioner Fils et Cables d'Acier de Lens ("FICAL") agreed to sell and respondent Midland Metals Corporation ("Midland") agreed to buy galvanized steel wire. Pursuant to New York arbitration clauses in the contracts, the parties submitted to arbitration a dispute respecting the quality of the product delivered under the contracts and the resulting non-payment of the purchase price. On September 23, 1983 the arbitrators rendered their decision awarding specified principal amounts to ·each party plus interest on certain of the principal amounts due from Midland to FICAL. FICAL petitioned this Court for confirmation of the award and Midland cross-petitioned for modification of the award under an unusual contract provision stipulating that any arbitration award would be subject to judicial review to determine whether the arbitrators' findings of fact are "supported by substantial evidence" and whether "as ·a matter of law based on said findings of fact the award should be affirmed."

On April 5, 1984, this Court rendered an Opinion confirming the arbitration award insofar as it determined the principal amounts due from each party to the other, but remanded the matter to the arbitrators for further findings or explanation respecting the basis for their award of interest on the principal amounts due FICAL but not on the principal amount due Midland. 584 F.Supp. 240.

On September 24, 1984, the arbitrators rendered a supplemental award to explain their rationale respecting the award of interest. The matter is now before the Court on FICAL's petition to confirm the supplemental award and Midland's cross-petition to modify it.

The Court's opinion of April 5, 1984 is referred to for a fuller exposition of the background of the controversy. For present purposes, the following brief summary will suffice.

*Factual Background*

On June 4, 1980, the parties entered into a contract by which FICAL agreed to sell and Midland agreed to buy 650 metric tons of galvanized steel wire of specified quality which Midland intended to resell to Taiwan Power Co. ("Taiwan"). Although Taiwan accepted the wire and paid for it, Taiwan complained that the product failed to meet the contract specifications. On September 8, 1981, Midland sent FICAL a Telex demanding $862,154.56 (representing the full sales price of $818,154.56 plus $44,000—the amount of the performance bond which Midland had posted to guarantee delivery pursuant to the contract). Midland indicated that it was withholding $266,217.30 which was due from it to FICAL because of the dispute over the quality of the product.

After lengthy negotiations, Midland entered into a settlement with Taiwan by which the $44,000 performance bond was forfeited as of January 19, 1982 and Midland paid Taiwan an additional $181,104.14 on February 17, 1983. In addition, during the period up to February 17, 1983, Midland incurred expenses of $24,920.86 in connection with the dispute and its settlement, making a total of $250,025 paid by Midland because of the failure of the wire to meet specifications.

The parties entered into a second contract dated December 4, 1980 by which Midland agreed to purchase from FICAL an additional quantity of galvanized steel wire intended in part for delivery to other customers and in part for Midland's inventory. The contract price for this wire was payable in French francs ("ff") 90 days after the invoice dates.

In their original award, the arbitrators ruled that Midland should pay FICAL the following principal amounts:

$266,217.30 for wire sold to Taiwan

$4,788.97 for wire sold to other customers

ff 1,004,503 for wire in inventory and in hands of customers

plus the following interest:

$25,000 (the manner of computation was unspecified)

ff 135,000 (representing interest on ff 708,915.10 through December 13, 1982)

11% on ff 834,915 from 12/10/82 to 9/10/83

The arbitrators also ruled that FICAL should reimburse Midland in the sum of $250,025 which Midland had paid in connection with its settlement with Taiwan, but with no provision for interest thereon.

*Contentions of the Parties*

In their supplemental award, the arbitrators explained their failure to award interest on the principal amounts due Midland as follows:

The arbitrators decided on interest to [FICAL] ... and not to Midland ... because Midland was responsible for the interest on the monies it retained to ensure reimbursement from [FICAL] for settlement costs due to the quality problems in Taiwan. Furthermore, the Taiwan settlement was not paid by [Midland] until long after the litigation had been initiated. [Midland] was in possession of these funds and in a position to earn a return until February, 1983 when it made the payment to the Central Trust of China.

Midland contends (1) that it was improper to award FICAL interest on the full $266,217.30 due it on the Taiwan wire, because FICAL was owed a net amount of only $20,981.27 ($266,217.30 plus $4,788.97 minus $250,025); and (2) that in awarding 11% interest on the ff 834,915, the arbitrators awarded interest on interest (impermissible compound interest) because this amount of ff 834,915 includes ff 135,000 of interest which was awarded on ff 708,915.10 of the total of ff 1,004,503 principal amount due FICAL for wire in inventory and in customers' hands.

FICAL counters (1) that the arbitrators properly refused interest on the award of

$250,025 to Midland because they recognized that this amount was not paid by Midland in settlement of Taiwan's claim until long after Midland had received from Taiwan and had withheld the amount of $266,217.30 due to FICAL; (2) that FICAL was not awarded any interest on the $266,217.30 due it because the $25,000 FICAL was awarded represented interest on another principal amount of $79,788.97 (the $4,788.97 due to FICAL for wire in customers' hands plus $75,000 which Midland paid FICAL after the arbitration was underway); and (3) that FICAL is also entitled to interest on the additional principal amount of ff 296,587.71 on which the arbitrators unaccountably failed to award interest.

*Discussion*

There is some merit in the contentions of both parties.

The arbitration award, even after being augmented by the supplemental award, leaves many unanswered questions as the basis of computation of the interest awards and of the underlying rationale of the arbitrators. However, the parties are in agreement on at least one matter: that another remand to the arbitrators for further findings or clarification offers little promise of benefit. The Court, then, is left to resolve the matter as logically and equitably as it can on the basis of the present record.

In the absence of any clear justification for an award of interest on some of the principal amounts due and not on others, the Court concludes that logic and equity require the award of interest at the same rate on all amounts awarded from the dates on which they were respectively due. Thus FICAL will be awarded interest on:

$266,217.30   from September 8, 1981

$   4,788.97 )
             ) from 90 days after the in-
ff 1,004,503 ) voice dates

And Midland will be awarded interest on:
$44,000.00 from January 19, 1982
$206,025.00 from February 17, 1983

These awards of interest are in lieu of the interest awards of the arbitrators.

This resolution of the controversy will eliminate any apparent inconsistencies, anomalies or omissions in the arbitrators' award, such as the denial of all interest to Midland on the amounts due it because it had the "use" for different periods of different amounts due to FICAL; the unexplained failure to award interest on ff 296,587.71 of the ff 1,004,503 owed to FICAL; and the awarding of interest on the award of ff 135,000 in interest.

Neither party has contested the arbitrators' decision to award interest at the rate of 11% per annum, and the Court will accordingly confirm the use of that rate. All interest awards will run to the date of the judgment.

Counsel for FICAL are directed to submit to counsel for Midland, within 10 days of the date of this Opinion and Order, a proposed judgment order, for settlement on five days' notice, providing for the net award to FICAL computed as provided herein and in the Court's Opinion of April 5, 1984.

SO ORDERED.