**ST. LUKE'S HOSPITAL, a Michigan corporation, Plaintiff,**

v.

**SMS COMPUTER SYSTEMS, INC. formerly known as SMS Systems Corporation, a Pennsylvania corporation, Defendant.**

No. 87–CV–10198–BC.

United States District Court, E.D. Michigan, N.D.

Dec. 16, 1991.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

On July 9, 1991, Plaintiff St. Luke's Hospital ("St. Luke's") filed an Application to Confirm Arbitrator's Award or Alternatively to Vacate Only that Part of the Arbitrator's Award Which Denied Attorneys' Fees and Arbitrator's Fees and Expenses to St. Luke's. On July 10, 1991, Defendant Shared Medical Systems ("SMS") filed an Application to Vacate, Modify or Correct Arbitration Award. In August 1991, Plaintiff sought and was granted leave to amend its original application. Oral argument was heard on September 27, 1991.

## I. BACKGROUND

This dispute arose on a contract between the parties to supply Plaintiff St. Luke's with a computer system. The computer system did not perform up to St. Luke's expectations and St. Luke's filed a complaint for arbitration in this court. The complaint sets forth various claims based on UCC breach of warranty and common law fraud theories in addition to Consumer Protection Act claims. The prayer is for "an amount in excess of $1,000,000 of actual damages" as well as $5 million in punitive damages.

The contract, however, contains (1) a limitation of damages provision; and (2) an arbitration provision that tracks the language of the damages limitation provision.

The parties therefore disputed what the scope of the arbitration should be. On March 22, 1988, the Court entered the following order in this case:

At issue in this case is the scope of the arbitrable controversy between plaintiff and defendant. Both parties wish to proceed to arbitration, but on conflicting terms. Plaintiff St. Luke's contends that its entire claim in excess of $6 million can be reviewed by the arbitrator, while Defendant SMS insists that the arbitration provision in the contract between the parties limits the arbitrator to a determination of liability up to, but not in excess of, the $400,000 in license fees paid under the contract.

The contract between the parties includes an arbitration clause that limits arbitrable controversies to "amounts in controversy in excess of $10,000 and up to the amount of the license fee paid out by [Plaintiff St. Luke's]" at the time that an arbitrable dispute arises. *See* Agreement Number 84–252, para. 16. This clause tracks the language of the contract's limitation of liability clause. *See*

*id.*, para. 35. Thus, the limitation on arbitration stands or falls with the facially valid limitation on liability provision. *Compare id.*, para. 16 *with id.*, para. 35.

Either before or after arbitration, the Court and the parties may have to address the issue of the validity of the limitation of liability clause. In the Court's view, the appropriate course of action is to send the entire matter to arbitration. After the arbitrator has evaluated the claim and rendered an award, the claim may return to this Court for enforcement. *See* MCLA 600.-5001(2) & .5025. If Plaintiff St. Luke's receives, and then seeks enforcement of, an award in excess of "the amount of license fees paid out" by plaintiff, *see*, Agreement Number 84–522, para. 16, Defendant obviously can interpose a challenge to the arbitrator's authority to make such an award. As the Michigan Supreme Court suggested in *Detroit Automobile Inter–Insurance Exchange v. Gavin*, 416 Mich. 407 [331 N.W.2d 418] (1982), an arbitration award that exceeds a valid, contractual limitation is subject to adjustment as a "substantial … error of law." *Id.* at 444–445 [331 N.W.2d 418]. When, and if, such a challenge occurs, the Court will be faced with the question of the limitation of liability provision's validity. Until that time, the Court will yield to the intention of the parties to arbitrate their disputes. Accordingly, IT IS ORDERED THAT the parties shall proceed to arbitration, the Arbitrator having full power to determine the merits of the controversy between the parties including, but not limited to, the validity of the damage limitation clause and the amount of damages, if any.

The arbitrator held an evidentiary hearing, which spanned a period from June to November of 1989. There were thirty days of hearing and over 6,000 pages of transcript. In addition, post hearing briefs

were filed and two days of oral argument were presented.

In June of 1991, the arbitrator issued a "Notice of Award" which was two pages in its entirety. The arbitrator awarded $850,-000 in direct damages to St Luke's Hospital. No punitive damages and no prejudgment interest were awarded. Attorney fees and arbitration costs were denied by the arbitrator. A counterclaim had been filed by SMS for $157,056, but the arbitrator stated that the award of $850,000 was "net of any amounts claimed due by SMS." Consequently, there is no quantifiable amount of award, if any, with respect to the counterclaim.

SMS attacks the award because the arbitrator allegedly (1) exceeded his express powers to decide only claims involving up to the amount of license fees paid,[1] and (2) disregarded the contract and applicable law by awarding damages far in excess of the parties' agreed upon limitation, including an amount of consequential damages, which the parties had expressly agreed to exclude.

St. Luke's, in light of the motion to vacate by SMS, seeks the attorney fees and arbitration costs which were denied by the arbitrator, plus (1) interest on the arbitration award from the date of the award, (2) taxing of the arbitrator's fees and expenses as costs and, (3) attorneys' fees with respect to the proceedings before this court.

## II. ANALYSIS

### A. *Standard of Review*

There are two possible sources for the applicable standard of review, state law and federal law. The agreement between the parties specifies that arbitration would be "determined in accordance with Chapter 50 of the Revised Judicature Act." However, St. Luke's argues that the Federal Arbitration Act ("FAA") pre-empts application of the Michigan standard. In reality, the standards are not all that different.

---

**1.** Although the Agreement provided that $407,-500 in license fees was *payable,* SMS asserts that

the evidence at the arbitration hearing estab-

Both invoke a rather deferential review.[2]

The manner in which a court is to review an arbitration decision under the FAA was laid out by the Sixth Circuit in *Federated Department Stores v. J.V.B. Industries Inc.*, 894 F.2d 862, 866 (6th Cir. 1990). The court first noted that the statute provides that the party seeking review must prove that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d). The court then went on to review how other courts have interpreted this language, noting that "the standard of review in arbitration cases is very narrow." *Federated Department Stores*, 894 F.2d at 866.

> [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.*, (quoting *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The court concluded that "[a]rbitrators do not exceed their authority unless they display a manifest disregard of the law. A misinterpretation of the contracts will not, in itself, vitiate the award." *Id.*

The leading authority in Michigan regarding the standard for reviewing an arbitration decision is *DAIIE v. Gavin*, 416 Mich. 407, 331 N.W.2d 418 (1982). *Gavin* involved an arbitrator's award that exceeded the policy limits of the operative automobile insurance policy's limits. The Court adopted the following standard:

> [W]here it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must

have been made, the award and decision will be set aside.

*Id.* at 443, 331 N.W.2d 418 (quoting *Howe v. Patrons' Mutual Fire Ins. Co. of Michigan*, 216 Mich. 560, 562, 185 N.W. 864 (1921)). The Court continued, noting:

> The character or seriousness of an error of law which will invite judicial action to vacate an arbitration award under the formula we announce today must be error so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise.
>
> Reviewing courts should focus upon the materiality of the legal error to test whether judicial disapproval is warranted, and not upon the question whether the rule of law was so well settled, widely known, or easily understood that the arbitrators should have known of it. Arbitrators are not necessarily trained in the law and are men and women of varying ability and expertise.

*Id.* 416 Mich. at 443–444, 331 N.W.2d 418.

Interestingly, the applicable court rule language in Michigan mimics that of the FAA. Specifically, the court is to vacate an award when "[t]he arbitrators exceeded their powers." MCR § 3.602(J)(1)(c).

Both parties rely upon *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) in arguing what the applicable law should be. In that case, the Supreme Court faced the question of whether application of a California procedural statute, which allowed the court to stay arbitration pending resolution of a related litigation between a party to the arbitration agreement and third parties not bound by the agreement, was pre-empted by the Federal Arbitration Act. As with our case, the parties had specified that state law would govern their arbitration.

The Court noted that the FAA contains no express pre-emptive provision, nor does

lished that the amount *paid* was $300,360. However, this amount is disputed.

2. Defendant SMS initially argues that this court should review the arbitration on a *de novo* standard. The position is unsupportable and is rejected.

it reflect a congressional intent to occupy the entire field of arbitration. *Id.* at 477, 109 S.Ct. at 1254. Nonetheless, as with any federal statute, when a state law "actually conflicts" with the federal law, the state law is pre-empted.

The Court found that the particular California statute was not pre-empted, since it did not actually conflict with the FAA. In that respect, the holding is rather limited since it examines only a particular procedural statute. The dicta, however, provides some guidance:

> In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (Citations omitted). But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, (citation omitted), so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms, (citation omitted), we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.

*Id.* at 478–79, 109 S.Ct. at 1255–56.

The Court concludes that Michigan case-law (and the standards revealed therein) are more appropriately applied than those cases interpreting the FAA. But as stated above, the distinctions between the two "standards" are not readily apparent.

**B.** *Asserted Error in the Award*

SMS argues that the contract expressly limits the scope of the arbitrator's authority, and that by awarding an amount in excess of the license fees, he exceeded that authority. St. Luke's argues that the arbitration is not so limited because (1) it depends upon the validity of the limitation clause, (2) the arbitration covers "any dispute", (3) SMS's reading would lead to multiple proceedings in multiple forums, and (4) any doubt must be resolved in favor of arbitrability.

■ The Michigan Revised Judicature Act speaks in part to this issue. In M.C.L. § 600.5001(2), it is provided that:

> A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. *Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract.* Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter.

In this case, the Agreement contains a provision entitled Limit of Liability which reads as follows:

> Synergy's total liability for damages incurred by (SLH) for any cause in contract or in tort, shall be limited to the amount of license fees paid out by (SLH) as of that time.

More important is the Arbitration clause which, in pertinent part, reads as follows:

> Arbitration shall apply to amounts in controversy in excess of $10,000 and up to the amount of license fees paid out by (SLH) as of that time; ...
>
> *Any dispute or controversy* with respect to this Purchase Agreement and all Exhibits attached hereto or any other aspect thereof shall be determined in accordance with the provisions of Chapter 50 of the Michigan Revised Judicature Act.

(Emphasis added).

SMS argues that the phrase "any dispute or controversy" should be read to say "such arbitration as defined by the limitation on liability clause." Despite the arguments of counsel, the Court feels that "any dispute or controversy" means "any dispute or controversy." Specifically, the Court concludes that the validity of the limitation on liability provision is a dispute within the scope of the arbitration agreed upon by the parties. The restatement of the language from the Limitation of Liability clause within the Arbitration clause is a reiteration and nothing more. It does not exempt the issue from arbitration.

The Court's earlier opinion states that "the limitation on arbitration stands or falls with the facially valid limitation on liability provision." The opinion sent the issue of the limitation provision validity to the arbitrator. The arbitrator had the "full power to determine the merits of the controversy between the parties including, but not limited to, the validity of the damage limitation clause and the amount of damages, if any." Therefore, not only was the issue *proper* for arbitration, it was actually *presented* for arbitration.

### C. *The Factual Nature of the Inquiry:*

■ According to the Michigan standard, an error of law, obvious from the face of the award, is required to vacate an arbitration award. Where the outcome is dependent upon an inquiry which is of an essentially factual nature, the award is to be sustained. The inquiry before the arbitrator was the validity of the limit on liability provision.

Despite the reference to the Michigan Revised Judicature Act in the arbitration clause of the contract, the rest of the contract is to be governed by California law. There are essentially two limitations at issue: a general limit on liability, and a consequential damages exclusion.[3]

■ A substantial monetary limitation can only be disregarded if circumstances caused it to "fail of its essential purpose." *See* U.C.C. § 2–719(2). Under California law, "circumstances" have caused a damage limitation clause to fail of its essential purpose whenever the facts show that: 1) the damage limitation clause has become oppressive by change of circumstances, *Milgard Tempering, Inc. v. Selas Corp. of America,* 761 F.2d 553 (9th Cir.1985), or 2) that the vendor's failure deprived a party of the substantial value of the bargain, U.C.C. commentary to § 2–719, or 3) that the breach is sufficiently fundamental that the parties did not contemplate such failure when they agreed to the damage limitation clause, *S.M. Wilson & Co. v. Smith Intern., Inc.,* 587 F.2d 1363 (9th Cir.1978). The third might also be rephrased to when there has been a "total and fundamental default of the seller." *Hawaiian Telephone Co. v. Micro Form Data Systems,* 829 F.2d 919 (9th Cir.1987). In addition, each case is to be "examined on its on facts", *RRX Industries, Inc. v. Lab–Con, Inc.,* 772 F.2d 543, 547 (9th Cir.1985).

■ Resolution of the limitation provision's viability under these standards is clearly factual. The duration and complexity of the arbitration proceedings bears that out. Under these circumstances, *Gavin* is instructive:

---

**3.** It seems clear that the limitations in this case substantially constrain the possible recovery. The parties do not appear to dispute that conclusion. Specifically, there was a repair and replace remedy which had to be exhausted and, failing that, actual damages could be recovered up to the amount of the license fees paid, which ended up being between $300,000 and $400,000. In addition, there was in the contract an express exclusion of consequential damages. The entire contract price was between $1 million and $2 million.

Arbitration, by its very nature, restricts meaningful legal review in the traditional sense. As a general observation, courts will be reluctant to modify or vacate an award because of the difficulty or impossibility, without speculation, of determining what caused an arbitrator to rule as he did. The informal and sometimes unorthodox procedures of the arbitration hearings, combined with the absence of a verbatim record and formal findings of fact and conclusions of law, make it virtually impossible to discern the mental path leading to an award. Reviewing courts are usually left without a plainly recognizable basis for finding substantial legal error. It is only the kind of legal error that is evident without scrutiny of intermediate mental indicia which remains reviewable, such as that involved in these cases. *In many cases the arbitrator's alleged error will be as equally attributed to alleged "unwarranted" factfinding as to asserted "error of law". In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's finding of fact are unreviewable.*

*Gavin,* 416 Mich. at 429, 331 N.W.2d 418. (Emphasis added).[4]

The asserted error is not so plainly one of law when we look to the factual inquiry necessary to make the legal conclusion. It is an inescapable conclusion that the arbitrator found a failure of essential purpose in the limited remedies. To vacate the award, would be to engage in a *de novo* factual inquiry as to the adequacy of the remedies. That is an unacceptable result. Arbitration is afforded greater deference than this.

The Court will not determine *de novo* whether the limits on liability are invalid. The validity of the damage limitation clause was extensively argued before the arbitrator. The Court is satisfied that the result obtained by the arbitrator is the result of an essentially factual inquiry. As a result, the Court finds no legal error upon which the award may be vacated.

St. Luke's alternative request to vacate only that part of the arbitrator's award which denied attorney fees and arbitrator fees and expenses is denied.

St. Luke's also seeks (1) interest on the arbitration award from the date of the award, (2) taxing of the arbitrator's fees and expenses as costs and, (3) attorneys' fees with respect to the proceedings before this court.

■ The Court relies upon *Gordon Sel-Way, Inc. v. Spence Bros., Inc.,* 438 Mich. 488, 475 N.W.2d 704 (1991) in assessing the applicable interest. Post-award interest from the date the award is rendered until an application to confirm the award is filed is governed by MCL 438.7 and the rate is five percent (5%). The period from application to judgment is governed by MCL 600.-6013. Post-judgment interest is determined pursuant to 28 U.S.C. § 1961(a).

■ The taxing of the arbitrator's fees and expenses, under MCL 600.5021 and MCR 3.602(M), will be denied. Such taxation is discretionary. In this case it would be contrary to the parties' agreement to share equally the costs of arbitration.

Attorney fees with respect to proceedings before this court are properly characterized as being incident to arbitration. Therefore, the agreement between the parties to pay their own legal fees in the event of arbitration governs and no attorney fees will be awarded.

---

4. In result, *Gavin* is distinguishable from this case because the scope of the court's inquiry into the reasoning of the arbitrator was very limited, possibly nonexistent. In *Gavin* the law was quite established that anti-stacking provisions in insurance policies were valid. The validity of the limitations and exclusions at bar require a case by case analysis and inquiry as to the success or failure of the remedies provided.