Irma COLLINS, Plaintiff,

v.

**BLUE CROSS BLUE SHIELD OF MICHIGAN, Defendant.**

No. 95–CV–72192–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 29, 1995.

Nelson S. Chase, Farmington Hills, MI, for Plaintiff.

James R. Murphy, Blue Cross Blue Shield of Michigan, Detroit, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER .

ZATKOFF, District Judge.

### I. INTRODUCTION

In this action, plaintiff Irma Collins seeks confirmation of an Arbitration Award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Michigan Arbitration Act, M.C.L. § 600.5001 *et seq.* The defendant, Blue Cross Blue Shield of Michigan ("BCBSM"), has filed a counterclaim seeking to vacate the Arbitration Award. Currently before this Court are the parties' cross-motions for summary judgement. The facts and legal arguments are adequately presented in the briefs, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D.Mich.Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments.

Binding arbitration was requested in this matter pursuant to the BCBSM Termination Arbitration Procedure for Non–Bargaining Unit Employees (the "Arbitration Agreement"). In an Opinion and Arbitration Award dated April 13, 1995, the arbitrator, Elliot I. Beitner, determined that in terminating the plaintiff, BCBSM had violated both the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101; and the Michigan Handicappers' Civil Rights Act ("MHCRA"), M.C.L. § 37.1101. The arbitrator awarded back pay and attorney fees and ordered BCBSM to reinstate the plaintiff.

After reviewing the motions, briefs, the Court file and the relevant case law and statutes, the Court concludes that the Arbitration Award should be confirmed. Accordingly, plaintiff's motion will be GRANTED, and defendant's motion will be DENIED.

### II. BACKGROUND

The plaintiff, Irma Collins, was an employee at BCBSM with nine years of service and no disciplinary record. On November 11, 1993, plaintiff took a medical leave of absence due to stress and began psychiatric treatment with Dr. Rosalind Griffin. Dr. Griffin sent reports to BCBSM indicating that the

plaintiff was disabled from work as a result of a mental condition known as major depression/adjustment disorder. The plaintiff received short term disability benefits during her leave of absence.

On December 16, 1993, plaintiff was examined by Dr. Jolyn Welsh Wagner, a psychiatrist, to determine whether she continued to be disabled. In the course of the examination, plaintiff made certain statements to Dr. Wagner regarding her supervisor at BCBSM: "I hate the bitch"; "She is living on borrowed time and she doesn't know it"; "I have killed her a thousand times in my mind."

The plaintiff's treating psychiatrist, Dr. Griffin, did not believe that the plaintiff would act on her homicidal ideation, and concluded that the plaintiff was not a threat to herself or others in the workplace. The examining psychiatrist, Dr. Wagner, would not characterize the grievant's statements as threats; instead, she referred to them as expressions of the plaintiff's thoughts.

After receiving Dr. Wagner's interim report, BCBSM concluded that the plaintiff should be terminated. Dr. Griffin determined that plaintiff had recovered from her disability and authorized her to return to work on February 1, 1994. When plaintiff returned to work, she was terminated.

Plaintiff filed a request for arbitration alleging violations of the Americans With Disabilities Act and Michigan Handicappers' Civil Rights Act. The arbitrator concluded that BCBSM, in terminating the plaintiff, had violated both the ADA and the MHCRA. The arbitrator awarded back pay and attorney fees and ordered BCBSM to reinstate the plaintiff.

### III. OPINION

#### A. Standard of Review

There are three possible sources for the applicable standard of review of the Arbitration Award—state law, federal law and the Arbitration Agreement. The Arbitration Agreement entered into by the parties provides, with regard to the Judicial Enforcement and Review of an arbitrator's award, as follows:

This Arbitration Procedure and proceedings hereunder shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, as well as the Michigan Arbitration Act, 27 MSA § 5001 *et seq.* An arbitrator's award rendered pursuant to this Arbitration Procedure shall be enforceable, and a judgement may be entered thereon, in a Michigan federal district court or Michigan circuit court of competent jurisdiction.

The decision of the arbitrator shall be final and binding; provided however, that limited judicial review may be obtained in a Michigan federal district court or Michigan court of competent jurisdiction (a) in accordance with the standards for review of arbitration awards as established by law; or (b) on the ground that the arbitrator committed an error of law.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, states, in pertinent part:

If the parties in their agreement have agreed that a judgement of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

The manner in which a court is to review an arbitration award under the FAA was set forth by the Sixth Circuit in *Federated Department Stores v. J.V.B. Industries, Inc.*, 894 F.2d 862, 866 (6th Cir.1990). The court first noted that the party seeking review must prove that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." See 9 U.S.C. § 10(d). The court then reviewed how other courts have interpreted this language, observing that "the standard of review in arbitration decisions is very narrow." *Id.* at 866.

"[A]s long as the arbitrator is even arguably construing or applying the contract and

acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 866 (quoting *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). The *Federated* court concluded that "[a]rbitrators do not exceed their authority unless they display a manifest disregard of the law." *Id.* at 866.

The Michigan Arbitration Act, MCL § 600.5001(2), states, in pertinent part:

A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgement of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist in law and equity for the rescission or revocation of any contract.... Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter.

The leading authority in Michigan regarding the standard for reviewing an arbitration decision is *DAIIE v. Gavin,* 416 Mich. 407, 331 N.W.2d 418 (1982). The *DAIIE* court adopted the following standard:

[W]here it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside. *Id.* at 443, 331 N.W.2d 418 (quoting *Howe v. Patrons' Mutual Fire Ins. Co. of Michigan,* 216 Mich. 560, 562, 185 N.W. 864 (1921)).

Thus, the Court must choose between three competing standards of review: the federal "manifest disregard of law" standard, the state "substantial error of law" standard, and the alternative "error of law" standard expressed in the Arbitration Agreement.

■ At the outset, the Court notes that federal and state standards "are not all that different ... [b]oth invoke a rather deferential review." *St. Luke's Hospital v. SMS Computer Systems, Inc.,* 785 F.Supp. 1243, 1245–46 (E.D.Mich.1991). As with any federal statute, however, "when a state law 'actually conflicts' with the federal law, the state law is pre-empted." *Id.* at 1247. See also U.S. Const., Art. VI, Clause 2. Moreover, "where the Federal Arbitration Act enforces agreements to arbitrate, the Act controls and governs the arbitration in question, including the means of securing judicial review." *Corey v. New York Stock Exchange,* 493 F.Supp. 51 (W.D.Mich.1980). As between the state and federal standards, the federal standard of review must prevail.

■ The next issue the Court must address is whether the parties can, by agreement, alter the nature of a federal court's role in the arbitration process. In *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. University,* 489 U.S. 468, 478–79, 109 S.Ct. 1248, 1255–56, 103 L.Ed.2d 488 (1989), the Supreme Court held that "[a]rbitration under the act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted."

Although the freedom of contract language in *Volt* applies only in the context of the arbitration itself, this principle has been extended by at least one court to its determination of the applicable standard of review. In *Fils et Cables d'Acier de Lens v. Midland Metals Corp.,* 584 F.Supp. 240, 245 (S.D.N.Y. 1984), the court reviewed the arbitrator's award "in accordance with the standard provided for by the parties' agreement and not by the less searching inquiry normally applicable in an action to confirm an arbitration award." The court allowed the parties to alter the roles of the arbitrators and courts in a contract which provided for more extensive court involvement than is ordinarily the case. *Id.* at 245. The *Fils et Cables* court could find no jurisdictional or policy barrier to such a result. *Id.* at 245.

The Court will thus review the Arbitration Award in the instant case under the lowest common denominator "error of law" standard provided in the Arbitration Agreement. The Court recognizes that the plaintiff, as a non-bargaining unit employee of BCBSM, did not bargain for this lowered standard. However, such a standard is not inherently unfair to either party and the Arbitration Agreement does not resemble an adhesion contract in this regard. Moreover, the Court's decision is premised on the notion that if defendant's assertions are unable to overcome even this lower standard, they will certainly fail under the more stringent federal standard.

### B. Arbitration Agreement and Award

■ Non-union employees at BCBSM are considered employees at will who can be terminated for any lawful reason. The BCBSM Termination Arbitration Procedure for Non–Bargaining Unit Employees ("Arbitration Agreement") requires claims of statutory violations to be presented solely through arbitration administered under the rules of the American Arbitration Association. As a threshold matter, the Court observes that an employee's claims under the ADA can be arbitrated. *Solomon v. Duke University*, 850 F.Supp. 372 (M.D.N.C.1993).

■ To establish a prima facie case of discrimination in violation of the ADA, the plaintiff must prove (1) that she is a qualified individual; (2) with a disability; (3) that she has suffered adverse employment action; and (4) that a causal connection exists between the adverse employment action and her disability. *Smith v. Upson County, Ga.*, 859 F.Supp. 1504 (M.D.Ga.1994).

Under the MHCRA, MCL § 37.1202(1)(b), a prima facie showing of handicap-related discriminatory discharge is made when (1) plaintiff demonstrates that she is handicapped under the act; (2) her handicap is unrelated to her ability to perform her work; (3) she was discharged; and (4) there is some evidence that the employer acted with discriminatory intent. *Sherman v. Optical Imaging Systems, Inc.*, 843 F.Supp. 1168 (E.D.Mich.1994). As the arbitrator noted, the MHCRA is quite similar to the ADA, and plaintiff's claim contained the elements of both acts. Although the arbitrator only analyzed plaintiff's claim as it related to the ADA, the arbitrator concluded that defendant violated both the ADA and MHCRA.

The arbitrator made the following factual findings relevant to the plaintiff's ADA claim. First, the arbitrator concluded that the plaintiff was a qualified person under the ADA. Despite deficiencies in her writing noted by her supervisor, the plaintiff had received a well-qualified rating and had never been disciplined for performance deficiencies. Moreover, plaintiff was not disqualified from performing her work duties on the basis of her statements to Dr. Wagner.

Second, the arbitrator found that there was little dispute that the plaintiff suffered a disability during the period of time that she was on sick leave. Third, it is undisputed that plaintiff's termination constitutes "adverse employment action."

Finally, the arbitrator found that the plaintiff was terminated because of her disability. The arbitrator determined that the plaintiff's statements made at her examination with Dr. Wagner were the products of her psychiatric disability. The arbitrator concluded further that BCBSM was under the perception that the plaintiff was suffering from a psychiatric disability that included homicidal ideation when it terminated the plaintiff.

### C. Analysis

This Court must determine whether the arbitrator committed an error of law in his conclusion that BCBSM violated both the ADA and the MHCRA. The Defendant raises two objections to the Arbitration Award in the instant case.

■ First, BCBSM argues that the plaintiff was terminated not because of her disability, but because of the statements she made threatening to kill her supervisor. BCBSM argues that these statements render her "not otherwise qualified" for her position at BCBSM.

The defendant's argument is premised on its belief that plaintiff's statements made during a psychiatric evaluation constitute misconduct. The cases the defendant has

relied upon, both here and at the arbitration hearing, duly support its contention that "[a]n employer has the legal right to discharge an employee for misconduct, even an employee with a qualifying disability, even if the misconduct was a direct manifestation of the disability" (Defendant's Brief 2). As the arbitrator noted, however, the cases relied upon by BCBSM involve either violent or threatening misconduct in the workplace, or criminal misconduct outside of the workplace. Neither were present in the instant case.

The defendant has failed to persuade this Court that statements made by the plaintiff to an examining psychiatrist constitute workplace misconduct or that they were in violation of the law. The defendant has made several conclusory statements in this regard ("Plaintiff's vehement statements about killing her supervisor were a nondiscriminatory reason for discharge no matter where the statements were made, or to whom" (Defendant's Brief 7)); but defendant has presented no arguments or legal authority to support its contention that plaintiff's statements constituted misconduct.

This Court is not persuaded that plaintiff's statements to Dr. Wagner disqualify her from employment with BCBSM as a matter of law. Neither of plaintiff's psychiatrists concluded that her statements constituted threats. Rather, they characterized the statements as expressions of her thought and "homicidal ideations" consistent with plaintiff's psychiatric diagnosis. The plaintiff did not make these statements directly to her supervisor, nor did she make them to fellow employees. The statements were made in the private setting of a psychiatric evaluation.

It is important to note that Dr. Griffin, the treating psychiatrist, did not believe that plaintiff had the present ability to act on her homicidal ideation or was a threat to her supervisor at the time the remarks were made. Moreover, she did not consider the plaintiff's ideation as presenting a danger and did not feel required to report it to BCBSM.

Dr. Griffin determined that plaintiff had recovered from her disability and authorized her to return to work on February 1, 1994.

The arbitrator found that plaintiff was capable of performing her work despite deficiencies in her writing and editing skills, noting that plaintiff had received a well-qualified rating and had not been disciplined for performance deficiencies.

The Court has no authority to disturb the arbitrator's factual finding that the statements were the product of plaintiff's psychiatric disability. Thus, the statements made by the plaintiff did not disqualify her from employment at BCBSM, and terminating her on the basis of the statements was equivalent to terminating her because of her disability.

■ BCBSM's second argument is that the Arbitration Award is against public policy because it orders the company to reinstate an employee who has threatened to kill her supervisor.

■ In *Shelby County Health Care Corporation v. American Federation of State, County and Municipal Employees, Local 1733*, 967 F.2d 1091 (6th Cir.1992), the Sixth Circuit laid out the manner in which a court may refuse to enforce an arbitration award that violates public policy:

> [T]he public policy exception to the general deference afforded arbitration awards is very limited, and may be exercised only where several strict standards are met. First the decision must violate some explicit public policy that is well defined and dominant. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).... Second, the conflict between the public policy and the arbitration award must be explicit and clearly shown. *Misco*, 484 U.S. at 43 [108 S.Ct. at 373]. Further, it is not sufficient that the "grievant's conduct for which he was disciplined violated some public policy or law," rather, the relevant issue is whether the arbitrator's award "requiring the reinstatement of the grievant ... violated some explicit public policy." *Interstate Brands v. Teamsters Local 135*, 909 F.2d 885, 893 (6th Cir.1990).

The defendant's counterclaim states "[f]urther, the arbitrator, by ordering reinstatement of an employee who threatens to kill

her supervisor, violated public policy." Aside from this conclusory statement, the defendant has failed to set forth an adequate basis for its claim. The defendant has failed to show that the arbitrator's decision violated "some explicit public policy that is well defined and dominant." Defendant's assertion that "[t]o threaten to kill another employee is a violation of BCBSM policy . . ." simply will not suffice. Thus, the defendant has failed to show that reinstating the plaintiff will violate some explicit public policy.

## IV. CONCLUSION

For the above reasons, the Court finds that the arbitrator did not make an error of law and therefore the Arbitration Award shall be confirmed.

Therefore, IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED and that defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.